**United States District Court**
For the Northern District of California

1

2

3                        UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5                              OAKLAND DIVISION

6

7    BRIAN KEITH RANDELL,                    No. C 06-6400 PJH (PR)

8                  Petitioner,              **ORDER DENYING PETITION
                                            FOR WRIT OF HABEAS
9        vs.                                CORPUS AND GRANTING
                                            CERTIFICATE OF
10   THOMAS L. CAREY, Warden,               APPEALABILITY**

11                 Respondent.
                                   /
12

13          This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §

14   2254.  The court ordered respondent to show cause why the writ should not be granted.

15   Respondent filed an answer and a memorandum of points and authorities in support of it,

16   and lodged exhibits with the court.  Petitioner responded with a traverse.  Petitioner then

17   moved to stay proceedings to allow him to exhaust an additional claim based on

18   *Cunningham v. California*, 549 U.S. 270, 273 (2007).  The initial motion was denied, but a

19   renewed motion was granted and the case was administratively closed.

20          After the *Cunningham* claim was denied by the state courts, petitioner filed a motion

21   seeking leave to amend his federal petition to add the claim.  The court granted the motion

22   for leave to amend, reopened the case, and ordered respondent to show cause why the

23   writ should not be granted based on the new claim.  Respondent filed a supplemental

24   answer and lodged exhibits with the court.  Petitioner responded with a traverse to the

25   supplemental answer.  For the reasons set out below, the petition is denied.

26                                    **BACKGROUND**

27          On December 21, 2001, a jury found petitioner guilty of attempted robbery, *see* Cal.

28   Penal Code § 192(a), and voluntary manslaughter, *see* Cal. Penal Code §§ 211, 664.  For

United States District Court

For the Northern District of California

1   each count the jury found true the allegation that petitioner personally used a firearm, *see*

2   Cal. Penal Code § 12022.5(a).  On February 14, 2002, judgment was entered and

3   petitioner was sentenced to a total term of twenty-three years in prison.  *People v. Randell*,

4   2004 WL 363501 (Cal. App. 6 Dist. 2004).  On February 27, 2004, the judgment of

5   conviction was affirmed on appeal, and on May 14, 2004, the California Supreme Court

6   denied the Petition for Review.

7        Petitioner filed a state habeas corpus petition which was denied by the superior

8   court.  Petitioner filed a second habeas petition in superior court raising new claims, but the

9   petition was denied because he failed to raise the claims in his first petition.  A motion for

10  reconsideration was denied by the superior court, and subsequent habeas petitions were

11  summarily denied by the California Court of Appeal and the California Supreme Court.

12       After his federal petition was stayed, petitioner filed a state habeas petition in

13  superior court raising the *Cunningham* claim.  The superior court denied the petition, as did

14  the California Court of Appeal.  The California Supreme Court denied the petition without

15  prejudice pending a determination of whether *Cunningham* applied retroactively to

16  petitioner's sentence.  After it was determined that the rule announced in *Cunningham*

17  applied retroactively, petitioner filed a habeas petition in the California Court of Appeal,

18  which was denied.  Petitioner sought review in the California Supreme Court, which

19  remanded the case to the Court of Appeal and directed it to issue an order to show cause

20  returnable to the superior court as to why petitioner's upper-term sentence did not violate

21  *Cunningham*.  In a reasoned decision, the superior court denied the petition.  Subsequent

22  habeas petitions were summarily denied by the Court of Appeal and by the Supreme Court.

23

24       The facts of the crime, as described by the California Court of Appeal, can be

25  summarized as follows:  In December of 2000, petitioner and Angel Maldonado exchanged

26  gunfire in the parking lot of an apartment complex.  During the exchange, one of petitioner's

27  bullets killed an innocent bystander, Judith Schlem, who was in the parking lot unloading

28  packages from her car.  Maldonado had left his apartment with cocaine and a loaded gun

and was on his way to meet a buyer for the cocaine.  At his car Maldonado encountered petitioner and began arguing loudly with him.  As the argument escalated, both men drew weapons and petitioner fired his gun at Maldonado, and Maldonado tried to fire back.  One of petitioner's bullets ricocheted off the windshield of Maldonado's car, striking Schlem in the head and killing her.  At trial, the prosecution argued that petitioner shot at Maldonado during the course of an attempted robbery, and therefore he was guilty of felony murder. Petitioner claimed that he reasonably and justifiably used lethal force against Maldonado in self-defense, and therefore he was not criminally liable for the act that inadvertently resulted in the death of Schlem.  *Randell*, 2004 WL 363501 at *1-2.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations. *See Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

United States District Court

For the Northern District of California

1   federal court on habeas review may not issue the writ "simply because that court concludes

2   in its independent judgment that the relevant state-court decision applied clearly

3   established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must

4   be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

5        Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

6   determination will not be overturned on factual grounds unless objectively unreasonable in

7   light of the evidence presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at

8   340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

9        When there is no reasoned opinion from the highest state court to consider the

10   petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*,

11   501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.

12   2000).

13                              **DISCUSSION**

14        As grounds for federal habeas relief, petitioner asserts that: (1) the trial court erred

15   by giving incomplete instructions on his theory of transferred self-defense; (2) the jury

16   committed misconduct; (3) trial counsel was ineffective in not moving for a mistrial on

17   grounds of jury misconduct; (4) appellate counsel was ineffective for not raising the issue of

18   jury misconduct; and (5) the trial court's imposition of an upper term sentence based on

19   facts found by the judge rather than the jury constituted error under *Cunningham v.*

20   *California*, 549 U.S. 270 (2007).

21   **I.    Jury Instructions**

22        Petitioner argues that his due process rights were violated because the trial court

23   gave incomplete instructions on his theory of transferred self-defense.  The theory was

24   explained by the Court of Appeal as follows.  Where the facts indicate that "it is reasonably

25   necessary under the circumstances for a person to use potentially deadly force in

26   self-defense against an aggressor, then the use of such force represents the performance

27   of a lawful act in a lawful manner; and if the intentional use of deadly force kills the

28   aggressor or unintentionally kills some other person by accident, then the homicide is

4

United States District Court
For the Northern District of California

1  excusable and not unlawful." *Randell*, 2004 WL 363501 at *5.   In support of this argument,

2  petitioner points out that questions submitted to the court by one of the jurors during trial

3  made it clear that the jury should have returned a verdict in his favor because they did not

4  think he was criminally liable.  It therefore stands to reason that, because the jury found him

5  guilty of a homicide, they were not properly instructed on his theory of self-defense.

6      It is clearly established federal law that "the fact that [a jury] instruction was allegedly

7  incorrect under state law is not a basis for habeas relief."  *See Estelle v. McGuire*, 502 U.S.

8  62, 71–72 (1991).  Rather, federal habeas relief is available when a jury instruction so

9  infects the trial that the trial is rendered fundamentally unfair, in violation of petitioner's right

10  to due process.  *Id.*at 72.

11      The court must evaluate jury instructions in the context of the overall charge to the

12  jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169

13  (1982).  It is well established that a criminal defendant is entitled to adequate instructions

14  on the defense theory of the case.  *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000).

15  Failure to instruct on the theory of defense violates due process if "the theory is legally

16  sound and evidence in the case makes it applicable." *See Clark v. Brown*, 450 U.S. 898,

17  904-05 (9th Cir. 2006) (citation omitted).  However, the defendant is not entitled to have

18  jury instructions raised in his or her precise terms where the given instructions adequately

19  embody the defense theory.  *See United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir.

20  1996).  An examination of the record is required to see precisely what was given and what

21  was refused and whether the given instructions adequately embodied the defendant's

22  theory.  *See United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir.1979).

23      The California Court of Appeal concluded that petitioner was entitled to instructions

24  on his theory of transferred self-defense, and that the trial court was obligated to give the

25  appropriate instructions. The relevant instructions given by the trial court were as follows:

26      Transferred Intent

27  "[w]hen one attempts to kill a certain person but by mistake or
   inadvertence kills a different person, the crime, if any, so committed is the
28  same as though the person originally intended to be killed had been

1   killed." CALJIC No. 8.65.

2   <u>Self-Defense Against Assault</u>

3   "[i]t is lawful for a person who is being assaulted to defend himself from
    attack if as a reasonable person he has grounds for believing and does
4   believe that the bodily injury is about to be inflicted upon him. In doing so,
    that person may use all force and means which he believes to be
5   reasonably necessary and which would appear to a reasonable person in
    the same or similar circumstances to be necessary to prevent the injury
6   which appears to be imminent." CALJIC No. 5.30.

7   <u>Justifiable Homicide in Self-Defense</u>

8   "[t]he killing of another person in self-defense is justifiable and not
    unlawful when the person who does the killing actually and reasonably
9   believes, one, that there is imminent danger that the other person will
    either kill him or cause him great bodily injury, and number two, that it is
10  necessary under the circumstances for him to use in self-defense force or
    means that might cause the death of the other person for the purpose of
11  avoiding death or great bodily injury to himself. A bare fear of death or
    great bodily injury is not sufficient to justify a homicide. To justify taking
12  the life of another in self-defense, the circumstances must be such as
    would excite the fears of a reasonable person placed in a similar position
13  and the party killing must act under the influence of those fears alone.
    The danger must be apparent, present, immediate, and instantly dealt
14  with or must so appear at the time to the slayer as a reasonable person
    and the killing must be done under a well-founded belief that it is
15  necessary to save one's [sic] self from death or great bodily injury."
    CALJIC No. 5.13.
16
    <u>Justifiable Homicide–Lawful Defense of Self or Another</u>
17
    "[h]omicide is justifiable and not unlawful when committed by any person
18  in defense of himself if he actually and reasonably believed that the
    individual killed intended to commit a forcible and atrocious crime and
19  that there was imminent danger of that crime being accomplished. A
    person may act upon appearances whether the danger is real or merely
20  apparent." CALJIC No. 5.12.

21  <u>Excusable Homicide–Lawful Act</u>

22  "[t]he unintentional killing of a human being is excusable and not unlawful
    when, one, committed by accident and misfortune in the performance of a
23  lawful act by lawful means, and two, where the person causing the death
    acted with that care and caution which would be exercised by an
24  ordinarily careful and prudent individual under like circumstances."
    CALJIC No. 5.00.
25
    *Randell*, 2004 WL 363501 at *4-*5.
26
        After considering the instructions as a whole in light of each other and the
27
    evidence, the appellate court concluded that the instructions reasonably conveyed
28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  to the jury that when one justifiably uses deadly force against an aggressor, its use

2  is lawful; and if it kills the aggressor or an innocent bystander, the killing is

3  excusable and not a crime. *Randell*, 2004 WL 363501 at *5. Further, the appellate

4  court found there was not a "reasonable likelihood" that the jury misconstrued or

5  misapplied the law in light of the instructions given, the record at trial, and the

6  arguments of counsel. *Id.* at *6.

7       Petitioner argued at trial that he acted in lawful self-defense because he

8  drew his gun and fired only after Maldonado drew his gun and fired first, and

9  therefore the accidental killing of Schlem was excusable and not a crime. The trial

10  court agreed with petitioner that the record of the case supported instructions on

11  both traditional self-defense and transferred self-defense. Petitioner contends that

12  the instructions as given by the trial court did not reasonably convey his theory of

13  transferred self-defense, and that the Court of Appeals was wrong by speculating

14  that the import of the court's instructions was "readily apparent to the jurors given

15  the evidence and defense counsel's closing argument." *Randell*, 2004 WL 363501

16  at *5. Notably, defense counsel did not request supplemental instructions at trial,

17  nor does petitioner here describe any alternate instructions that would have more

18  accurately conveyed his theory of defense. The court's instructions as given

19  enabled petitioner to argue that he fired while lawfully trying to defend himself

20  against an aggressor, thereby excusing his killing of Schlem, which was precisely

21  his theory of defense. Petitioner's argument before this Court referencing the

22  juror's questions is completely unfounded as the questions were posed in the

23  middle of trial before the case was submitted to the jury, and therefore reveal

24  nothing about how the jury may have interpreted the court's instructions.

25       The California Court of Appeal's denial of petitioner's claim of

26  instructional error was not contrary to or an unreasonable application of Supreme

27  Court precedent because the instructions, considered as a whole, adequately

28  informed the jury regarding petitioner's theory of transferred self-defense. *See*

1    *Estelle*, 502 U.S. at 72.

2    **II.      Jury Misconduct**

3           Petitioner asserts that three instances of juror misconduct deprived him of

4    a fair trial.  First, after the trial court was informed that jurors had used cell phones

5    in the deliberation room, the trial court should have conducted a hearing in order to

6    ascertain whether the jury was tainted by any improper communication with

7    outside parties.  Second, juror 56 should have been discharged because he was

8    unwilling to follow the court's instructions, and was therefore unable to perform his

9    duties despite the trial court's attempt to rehabilitate him.  Third, juror 14 should

10   have been discharged because she was emotionally unable to deliberate and may

11   have discussed the case with an outside party after she left the jury room without

12   permission.  Petitioner claims that the trial court's failure to take appropriate action

13   to remedy this misconduct deprived him of his Sixth Amendment right to a fair and

14   impartial jury.

15          a. Factual Background

16          On the third day of deliberations, the jury foreperson sent the trial court a

17   note informing the judge that there was one juror who was holding out against a

18   verdict of first-degree murder due to a personal experience.  The next morning,

19   after determining that the juror was number 56, the parties agreed that the court

20   should conduct a limited inquiry to determine if the juror should be discharged

21   because he was unwilling or unable to deliberate, or whether he had failed to

22   disclose relevant information.  The foreperson, speaking to the court alone,

23   indicated that juror 56 did not refuse to participate in deliberations, but did express

24   an intention to disregard the court's instructions on first-degree murder.  The court

25   then asked counsel to formulate specific questions for juror 56.

26          Later that morning, juror 14 knocked on the door of the jury room and,

27   when the bailiff opened it, she immediately left the room and walked away.  The

28   bailiff caught up to her, describing her as distraught and observing that she had

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    broken into a rash.  The court called juror 14 into the courtroom by herself, where

2    she expressed frustration with one juror's refusal to give a verdict due to a

3    personal experience, and further stated that people were crying and swearing and

4    that she could not endure continued belittling.

5          The court then called in the entire jury and admonished them to remain

6    civil with each other.  The court also instructed them not to take cell phones into

7    the deliberation room, explaining that this was to prevent them from calling an

8    outside party to discuss the facts of the case.  The foreperson indicated that the

9    jury was unaware of this restriction and stated that all of them had been using their

10   cell phones until that point.  The court addressed the jury to make it clear that no

11   cell phones were to be used, and heard no indication from any juror that there was

12   a problem.

13         The court excused all the jurors for lunch, but asked juror 56 to remain

14   and answer the questions that had been prepared by both attorneys.  Juror 56

15   informed the parties that he was unable to follow some of the court's instructions

16   governing felony-murder, and also indicated that he did not believe the prosecution

17   had proven the first-degree murder charge beyond a reasonable doubt.  He further

18   stated that he disagreed with application of the felony-murder rule in this case

19   because, if petitioner was found guilty of attempted robbery, he should not

20   necessarily be guilty of first-degree murder.  However, he did state that he was

21   able to deliberate on the lesser included offenses to first-degree murder.

22         Based on his answers, the prosecutor moved to discharge the juror

23   because of his inability to follow the court's instructions.  Defense counsel opposed

24   the motion, arguing that juror 56 simply disagreed with whether the facts showed

25   first-degree murder.  The trial court agreed with defense counsel, and denied the

26   prosecutor's motion to discharge the juror.  Defense counsel moved for a mistrial

27   based on the deadlock described by jurors 14 and 56, but the trial court denied the

28   motion as premature and allowed the jury to continue deliberating.

United States District Court

For the Northern District of California

b. <u>Discussion</u>

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors.  U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  The Ninth Circuit has recognized that to disqualify a juror for cause requires a showing of actual bias or implied bias, that is "bias in fact, or bias conclusively presumed as a matter of law."  *See United States v. Gonzalez*, 214 F.3d 1109, 1111-12 (9th Cir. 2000) (citation omitted).

(i) <u>Hearing</u>

Petitioner claims that the trial court should have conducted a hearing in order to ascertain whether the jury was tainted by any improper communication with outside parties. The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *See Smith v. Phillips*, 455 U.S. 209, 215 (1982).  The Court has not defined the scope of such hearings but the Ninth Circuit has endorsed "a flexible approach when determining what steps to take in response to alleged juror bias." *See Tracey v. Palmateer*, 341 F.3d 1037, 1043 n. 4 (9th Cir. 2003).  Despite petitioner's claim to the contrary, the trial court did in fact conduct a hearing after learning that the jury had used cell phones during deliberations.  The parties were present, proceedings were on the record and, although the court did not individually ask each juror whether they had discussed the case with an outside party, the court was satisfied that no improper communications had occurred after addressing the entire jury and receiving no indication that anyone had discussed the case with an outside party.  Petitioner's claim is purely speculative as he offers no evidence that any such communication in fact took place.  Because neither petitioner nor the record reveal any evidence that a juror was biased due to an outside communication, no further inquiry was required.  *See Smith*, 455 U.S. at 217.

(ii) <u>Juror 56</u>

10

**United States District Court**
For the Northern District of California

1    Petitioner also claims that juror 56 should have been discharged because

2  he was unwilling to follow the court's instructions, and was therefore unable to

3  perform his duties.  Although juror 56 initially indicated that he was unwilling to

4  follow the court's instructions with respect to first-degree felony murder, upon

5  further inquiry by the court it became clear that the reason for this was that he

6  believed the prosecution failed to meet its burden to prove the charge of first-

7  degree murder beyond a reasonable doubt.  Petitioner ignores the fact that Juror

8  56 was the lone juror standing in the way of a first-degree murder conviction. As a

9  result, petitioner suffered no prejudice from the trial court's attempt to rehabilitate

10 him and subsequent failure to discharge him for bias.

11    In any event, the trial court's conclusion that there was no bias was

12 entirely reasonable based on juror 56's statement that he was able to deliberate on

13 the lesser included offenses to first-degree murder because he simply disagreed

14 that the facts showed first-degree murder.  When a party wishes to excuse a juror

15 for bias [during voir dire], the moving party must demonstrate, through questioning,

16 that the potential juror lacks impartiality.  *See Wainwright v. Witt*, 469 U.S. 412,

17 423 (1985).  After hearing juror 56's responses to the parties' questions, the trial

18 court was left with the impression that he was able to "faithfully and impartially"

19 apply the law according to the instructions, and therefore correctly overruled the

20 prosecutor's motion to have him discharged for bias.  *See Wainwright*, 469 U.S. at

21 424-26.

22            (iii)  Juror 14

23    Petitioner's final claim of misconduct is that juror 14 should have been

24 discharged because she was emotionally unable to deliberate and may have

25 discussed the case with an outside party after she left the jury room without

26 permission.  Although juror 14 was frustrated and upset, at no point did she

27 indicate that she was unable to continue deliberating, nor is there any indication

28 that she discussed the case with an outside party after she left the jury room

1    without permission.  After the court admonished the jury to be civil toward one

2    another, juror 14 did not renew her complaints.  There was no indication that she

3    was unable to continue deliberating and therefore the trial court had no basis to

4    discharge her.  Moreover, petitioner offers no evidence that juror 14 spoke with

5    anyone about the case during the brief time she was absent from the jury room.

6    On these facts, no further inquiry was warranted.

7            c. Conclusion

8            The record reflects that: (1) the trial court conducted a hearing after

9    learning of the jury's cell phone use and concluded that no juror had discussed the

10   case with an outside party; (2) there was no legitimate basis to discharge jurors 14

11   or 56 for misconduct; and (3) no further inquiry was warranted to determine

12   whether juror 14 communicated with an outside party.  Under these circumstances,

13   the state court's denial of petitioner's jury misconduct claim was not contrary to or

14   an unreasonable application of clearly established federal law, as determined by

15   the Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

16   **III.  Ineffective Assistance of Trial Counsel**

17           Petitioner contends that trial counsel was ineffective for (1) failing to

18   request a hearing after learning that jurors were using cell phones in the jury room;

19   (2) failing to request that juror 56 be discharged because he was unable to follow

20   the court's instructions; and (3) failing to ask that juror 14 be discharged on

21   grounds that she was too upset to continue deliberating, and for not requesting a

22   hearing to determine whether she had discussed the case with an outside party

23   after she left the jury room without permission.

24           In order to succeed on an ineffective assistance of counsel claim, the

25   petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*,

26   466 U.S. 668, 687 (1984), which requires him to show deficient performance and

27   prejudice.  Deficient performance requires a showing that trial counsel's

28   representation fell below an objective standard of reasonableness as measured by

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   prevailing professional norms.  *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

2   To establish prejudice, petitioner must show a reasonable probability that "but for

3   counsel's unprofessional errors, the result of the proceeding would have been

4   different."  *See Strickland*, 466 U.S. at 694.  If a petitioner cannot establish that

5   defense counsel's performance was deficient, it is unnecessary for a federal court

6   considering a habeas ineffective assistance claim to address the prejudice prong

7   of the *Strickland* test.  *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir.

8   1998).

9           a.  Cell Phone Use

10          Counsel's performance was not deficient for failing to request a hearing

11  regarding the jury's use of cell phones, as the record reflects that a hearing was in

12  fact conducted and no juror indicated that an outside communication had occurred.

13  Petitioner's claim is wholly speculative as he fails to provide any evidence showing

14  that an improper outside communication took place.

15          b.  Juror 56

16          It is clear from the record that the eleven other jurors were prepared to

17  convict petitioner of first-degree murder, and that juror 56 was the lone holdout.

18  The prosecutor, understanding that juror 56 was the lone holdout for first-degree

19  murder, argued for his discharge, while defense counsel opposed the motion.

20  Counsel's performance was not deficient for failing to argue for the discharge of

21  juror 56, when juror 56 clearly worked to petitioner's advantage in holding out

22  against first-degree murder.  Moreover, counsel for petitioner moved for a mistrial

23  based on the apparent impasse between juror 56 and the remaining jurors, but the

24  trial court concluded that he was able to continue deliberating and denied the

25  motion as premature.

26          c.  Juror 14

27          Although juror 14 indicated that she was frustrated and upset, at no point

28  did she inform the court that she was unable to continue deliberating.  After the

13

United States District Court

For the Northern District of California

1   judge admonished the jury to remain civil toward one another, juror 14 did not

2   renew her complaint, leaving no basis for counsel to ask for her discharge.

3   Furthermore, petitioner offers no evidence to show that juror 14 spoke with

4   anyone, or even had the opportunity to speak with anyone, about the case during

5   the brief time she was away from the jury room.  Counsel's performance was not

6   deficient for failing to request a hearing to further explore this issue.

7          Accordingly, the California courts' denial of relief after consideration of

8   these facts was not contrary to or an unreasonable application of clearly

9   established federal law. *See Strickland*, 466 U.S. at 687.

10  **IV.      Ineffective Assistance of Appellate Counsel**

11         Petitioner contends that his appellate attorney was ineffective for failing to

12  argue on appeal that (1) he was denied an impartial jury; (2) jurors 14 and 56 were

13  unwillling to follow the court's instructions; (3) juror 14 was tainted for storming out

14  of the jury room and possibly communicating with an outside party; and (4) the trial

15  court abused its discretion by declining to declare a mistrial.  Petitioner also argues

16  that appellate counsel failed to provide the appellate court with citations to the

17  record referencing notes submitted by the jury that would support his claim that the

18  trial court failed to properly instruct the jury on transferred self-defense.

19         The Due Process Clause of the Fourteenth Amendment guarantees a

20  criminal defendant the effective assistance of counsel on his first appeal as of right.

21  *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

22  assistance of appellate counsel are reviewed according to the standard set out in

23  *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Miller v. Keeney*, 882 F.2d

24  1428, 1433 (9th Cir. 1989).  Appellate counsel does not have a constitutional duty

25  to raise every nonfrivolous issue requested by defendant.  *See Jones v. Barnes*,

26  463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely

27  recognized as one of the hallmarks of effective appellate advocacy.  *Id.* at 751-52.

28         For the reasons discussed in Sections III and IV, *supra*, petitioner was

United States District Court

For the Northern District of California

1   not denied an impartial jury, it was proper to retain jurors 14 and 56, and there was

2   no cause to declare a mistrial because the jury had not reached an impasse.

3   Moreover, as discussed in Section I, *supra*, this Court determined that the trial

4   court's instructions on transferred self-defense adequately conveyed petitioner's

5   theory that the killing of Schlem was excusable because he justifiably used deadly

6   force against Maldonado.  Finally, the notes referred to by petitioner were

7   submitted by one juror in the middle of the trial, before the case was submitted to

8   the jury, and therefore do not support his claim of instructional error.  Because the

9   claims suggested by petitioner lack merit, appellate counsel's failure to raise them

10  on appeal was neither deficient nor prejudicial under the *Strickland* standard.

11  Consequently, petitioner did not receive ineffective assistance of counsel on

12  appeal, and he is not entitled to habeas relief on this claim.

13  **V.  *Cunningham* Claim**

14          Petitioner argues that the upper term sentences imposed for his voluntary

15  manslaughter conviction and for the personal use of a firearm enhancement

16  violated his Sixth Amendment right to a jury trial because they were based on facts

17  found by a judge and not proven to a jury beyond a reasonable doubt.

18          In *Apprendi v. New Jersey*, 530 U.S. 466 (2000) the Supreme Court held

19  that any fact that increases the penalty for a crime beyond the prescribed statutory

20  maximum must be submitted to a jury and proved beyond a reasonable doubt.

21  *See  Apprendi*, 530 U.S. at 466.  In *Blakely v. Washington*, 542 U.S. 296 (2004),

22  the Supreme Court explained that "the 'statutory maximum' for *Apprendi* purposes

23  is the maximum sentence a judge may impose *solely on the basis of the facts*

24  *reflected in the jury verdict or admitted by the defendant*."  *See Blakely*, 542 U.S. at

25  303 (emphasis in original).  This means that the "the middle term prescribed in

26  California's statutes, not the upper term, is the relevant statutory maximum."  *See*

27  *Cunningham v. California*, 549 U.S. 270, 288-89 (2007).  In *Cunningham*, the

28  Supreme Court, citing *Apprendi* and *Blakely*, held that California's Determinate

1

2

3   Sentencing Law violates a defendant's right to a jury trial to the extent that it

4   contravenes "*Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that

5   increases the penalty for a crime beyond the prescribed statutory maximum must

6   be submitted to a jury, and proved beyond a reasonable doubt.'" *See Id.* (*quoting*

7   *Apprendi*, 530 U.S. at 490).[1]

8           The superior court, addressing only the upper term sentence imposed on

9   the voluntary manslaughter charge, agreed that the sentence violated *Cunningham*

10  because the trial court imposed the sentence based on the following aggravating

11  factors:  (1) that the victim was particularly vulnerable; and (2) that petitioner had

12  engaged in violent conduct which indicates a serious danger to society.

    Petitioner's Exhibit ("Pet. Exh.") D. Nevertheless, the superior court concluded that

13  the *Cunningham* error was harmless beyond a reasonable doubt because the trial

14  court found that the following three recidivist factors justified imposition of the

15  upper term sentence on the firearm enhancement: (1) petitioner's prior adult

16  convictions were numerous and of increasing seriousness; (2) petitioner committed

17  the crime when he was on probation; and (3) petitioner's performance on probation

18  and parole was unsatisfactory.  Pet. Exh. D.  Under California law, "if a reviewing

19  court concludes, beyond a reasonable doubt, that the jury, applying the beyond a

20  reasonable doubt standard, unquestionably would have found true at least a single

21  aggravating circumstance had it been submitted to the jury, the Sixth Amendment

22  error properly may be found harmless."  *See People v. Sandoval,* 41 Cal. 4th 825,

23  839 (2007).  In this case the superior court found that any one of the three

24  recidivist factors justified imposition of the upper term sentence on either the

25

26  _____

27      [1] *Cunningham* applies retroactively on collateral review only to convictions that became
    final on direct review after the decision in *Blakely*, on June 24, 2004, *see Butler v. Curry*, 528
28  F.3d 624, 639 (9th Cir. 2008), and therefore applies retroactively to the instant case.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3  voluntary manslaughter charge or the firearm enhancement.  Pet. Exh. D.  Further,

4  the superior court went on to conclude that the record reflected a clear-cut

5  instance of victim vulnerability and violent conduct indicating a serious danger to

6  society.  Pet. Exh. D.

7          With respect to the voluntary manslaughter charge, the superior court

8  correctly found *Cunningham* error because neither aggravating factor was proven

9  to a jury beyond a reasonable doubt, nor fell within the prior conviction exception.

10  However, failure to submit a sentencing factor to a jury is subject to harmless error

11  analysis.  *See Butler*, 528 F.3d at 648.  In federal habeas proceedings, there is

12  prejudice if the error had a substantial and injurious effect on petitioner's sentence

13  under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See*

14  *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001).  Applying this standard the

15  court must grant relief if there is "grave doubt" as to whether a jury would have

16  found the relevant aggravating factors beyond a reasonable doubt.  *See O'Neal v.*

17  *McAninch*, 513 U.S. 432, 446 (1995). Grave doubt exists when, "in the judge's

18  mind, the matter is so evenly balanced that he feels himself in virtual equipoise as

19  to the harmlessness of the error." *Id.* at 453.  Under California law, only one

20  aggravating factor is necessary to set the upper term as the maximum term,

21  therefore any *Apprendi* error will be harmless if there is no prejudice as to just one

22  of the aggravating factors at issue.  *See Butler,* 528 F.3d at 648.

23          Here the trial court, after evaluating the evidence, considering the jury's

24  verdict, examining the sentencing materials, and taking into consideration the

25  statements and arguments at sentencing, concluded that the aggravating factors

26  for (i) vulnerable victim and (ii) violent conduct posing a serious danger to society,

27  were appropriate.  Under California law, vulnerable means "defenseless,

28  unguarded, unprotected, accessible, assailable, one who is susceptible to the

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

defendant's criminal act." *See People v. Weaver*, 149 Cal. App. 4th 1301, 1314 (2007) (citation omitted).  Based on the evidence presented at trial, there is virtually no doubt, let alone grave doubt, that a jury would have concluded beyond a reasonable doubt that Judith Schlem was particularly vulnerable.  She was a completely innocent bystander who was simply unloading packages from her car.  She was not expecting a gun battle in her parking garage, nor did she have an opportunity to defend herself or find cover.  Likewise, there is little doubt that petitioner's participation in an extraordinarily reckless shootout in a public location that caused the death of an innocent victim would have led a jury to find beyond a reasonable doubt that he engaged in violent conduct posing a serious danger to society.

Turning now to the firearm enhancement, the superior court did not find *Cunningham* error, concluding instead that any of the three recidivist factors relied on by the trial court would have justified imposition of the upper term sentence on the enhancement because they fell within the prior conviction exception to the *Apprendi/Blakely/Cunningham* rule.  Pet. Exh. D.  The Supreme Court has not defined the scope of the prior conviction exception to the *Apprendi* rule. *See Kessee v. Mendoza-Powers*, 574 F.3d 675, 676 (9th Cir. 2009).  In *Kessee* the Ninth Circuit, applying the AEDPA standard, concluded that the state court's rejection of a *Cunningham* claim under a broader interpretation of the prior conviction exception than permitted in the Ninth Circuit, was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent.  *See Kessee*, 574 F.3d at 676.  In this case the superior court rejected petitioner's claim after finding that all three of the factors relied upon by the trial court related to prior convictions and therefore justified imposition of the upper term sentence.  Under AEDPA scrutiny, a broader interpretation of the prior conviction exception than

18

United States District Court

For the Northern District of California

normally allowed in the Ninth Circuit is permissible as long as the state court's view is reasonable. *See id.* Accordingly, the state court's determination that the upper term sentence was justified based on recidivist factors is not contrary to, and does not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See id.* at 679.

Although the trial court's imposition of an upper term sentence for voluntary manslaughter constituted error under *Cunningham* because it was based on facts found by the judge rather than the jury, the error was harmless because it did not have a substantial and injurious effect on petitioner's sentence. *See Hoffman,* 236 F.3d at 540. Further, the trial court's reliance on recidivist factors to impose an upper term sentence on the firearm enhancement was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent. *See Kessee*, 574 F.3d at 678-79.

## VI.     Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that only one issue presented by petitioner in

19

his petition meets the above standard and accordingly GRANTS the COA as to

that issue.  *See generally Miller-El v. Cockrell*, 537 U.S. at 322.

That issue is:

(1) whether the trial court gave incomplete instructions on petitioner's theory of

transferred self-defense.

Accordingly, the clerk shall forward the file, including a copy of this order,

to the Court of Appeals.  *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116

F.3d 1268, 1270 (9th Cir. 1997).

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is

**DENIED**.

A Certificate of Appealability is **GRANTED**.  *See* Rule 11(a) of the Rules

Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 5, 2013.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.06\RANDELL6400.hc.wpd

United States District Court
For the Northern District of California

20